**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ALLEN BROWN, JR. (R-53255),** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.  3:24 C 50110** |
| | ) | |
| **ANDREA TACK, Chief Administrative** | ) | **Judge Rebecca R. Pallmeyer** |
| **Officer Dixon Correctional Center; THE** | ) | |
| **STATE OF ILLINOIS; LATOYA HUGHES,** | ) | |
| **Acting Director of Illinois Department of** | ) | |
| **Corrections; WEXFORD HEALTH** | ) | |
| **SOURCES, INC.; CORRECTIONAL** | ) | |
| **OFFICER WENDE, individually;** | ) | |
| **CORRECTIONAL OFFICER BILLINGS,** | ) | |
| **individually; CORRECTIONAL OFFICER** | ) | |
| **KEIM, individually; CORRECTIONAL** | ) | |
| **OFFICER GARCIA, individually; OSF** | ) | |
| **HEALTHCARE SAINT KATHARINE** | ) | |
| **MEDICAL CENTER; and JANE DOE NO. 1,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

In May of 2023, Plaintiff Allen Brown, Jr., a prisoner in the custody of Illinois Department of Corrections at the Dixon Correctional Center, suffered a series of mental health crises that led him to self-harm.  Brown alleges in this lawsuit that after he swallowed a paper clip and inserted a foreign object into his urethra, he was transported to OSF Medical Center for treatment.  During the course of his treatment, and while under continuous suicide supervision by two correctional officers from the Illinois Department of Corrections, Brown grabbed and hid a catheter needle that an OSF employee had placed on his lap.  Neither the OSF employee nor the correctional officers attempted to retrieve the needle from Brown, which he later used to stab himself in the abdomen. Medical staff at Dixon Correctional Center allegedly failed to treat the wound or extract the needle Brown had inserted into his abdomen for several days.

Brown contends here that several actors abdicated their responsibilities for his safety. Specifically, Brown brings claims under 42 U.S.C. § 1983 against Defendants Latoya Hughes,

Acting Director of IDOC; Andrea Tack, Chief Administrative Officer of Dixon Correctional Center; the State of Illinois; the Illinois Department of Corrections ("IDOC"); Wexford Health Sources, Inc ("Wexford"); and Correctional Officers Kyle Wende, Jacob Billings, Zachary Kein, and Joseph Garcia. He also brings claims against the State of Illinois, Hughes, and Tack under the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* And finally, Brown brings claims of negligence against OSF Healthcare and an unidentified OSF employee. Wexford, the State Defendants, and OSF Healthcare moved to dismiss Brown's complaint in three separate motions [61, 66, 76]. For the reasons outlined here, Wexford's and the State Defendants' motions to dismiss are granted, and OSF Healthcare's motion to dismiss is denied.

## BACKGROUND

The facts laid out below are taken from Plaintiffs' Amended Complaint [34], which the court must accept as true at the pleading stage. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).

Allen Brown, Jr. is a prisoner in the custody of the Illinois Department of Corrections ("IDOC"). He has been in IDOC's custody since 2012, and is currently housed at the Joliet Treatment Center, where he receives mental health treatment. (Am. Compl. [34] ¶¶ 1, 16.) In his time in custody, Brown has been diagnosed with several serious mental illnesses including "schizophrenia, bi-polar disorder, schizoaffective disorder, anti-social personality disorder; borderline personality disorder; ADHD, oppositional defiant disorder and depression." (*Id.* ¶ 15.) As a result of these serious mental illnesses, Brown suffers from "hallucinations, paranoid delusions, impaired mood, impulsiveness, impaired thinking and concentration," which have led to "serious deterioration of [Brown's] routine functioning and loss of cognitive control of his actions." (*Id.* ¶ 17.) Brown's condition has resulted in at least 30 suicide attempts and repeated other attempts at self-harm. (*Id.*) These incidents have "resulted in numerous lacerations and gaping wounds to his neck, arms, legs, abdomen and genitalia." (*Id.* ¶ 20.)

2

On May 13, 2023, while housed at the Dixon Correctional Center, Brown swallowed a paper clip and "inserted foreign objects into his urethra." (*Id.* ¶ 23.) At the time, he was on continuous suicide watch, which requires officers "to maintain continuous visual and verbal monitoring of the patient." (*Id.* ¶ 22.) Prison staff determined that he needed emergency medical treatment, and Brown was transported to OSF Healthcare Saint Katharine Medical Center ("OSF Medical Center"), accompanied by Defendant Corrections Officers Wende and Billings who were assigned to continuous suicide watch for Brown. (*Id.* ¶ 24.) The complaint alleges that protocols ordinarily adopted for suicidal patients were not implemented for Mr. Brown at OSF Medical Center. (*Id.* ¶ 23.)

That afternoon at OSF Medical, an unidentified nurse or technician (identified as Jane Doe No. 1 for the purposes of the Complaint), inserted a catheter needle into Brown's arm to obtain a blood draw while Brown was restrained to the bed. When she removed the catheter needle, she placed it on Brown's lap. Brown grabbed the needle with his hand and hid it. Jane Doe No. 1 informed Wende and Billings that Brown had taken and hidden the needle, but the correctional officers took no action to retrieve the needle, allegedly stating "it was not their problem and they didn't care." (*Id.* ¶¶ 25–29.) Shortly thereafter, Doe No. 1 spoke with her supervisor and, when she returned, commented that "she was not concerned about the needle and that Mr. Brown would not die from it." (*Id.* ¶ 30.)

During his stay at OSF Medical Center, Mr. Brown underwent an endoscopy to remove the paperclip from his stomach. He was then transferred to University of Illinois Chicago Medical Center ("UIC Chicago Hospital") for treatment to remove the foreign object in his urethra. Before the transfer, neither OSF personnel nor prison staff made efforts to find the missing needle. Correctional Officers Wende and Billings, who were still assigned to suicide watch, accompanied Brown but were replaced at the end of their shifts by two other correctional officers, Roman and Dewey. (*Id.* ¶ 33–35.) Though they were "apparently briefed [by Wende and Billings] on the missing needle and the risk of self harm," Roman and Dewey also "made no attempt to locate or

3

remove the needle from Mr. Brown's possession." (*Id.* ¶ 35.)  Then, at the end of Roman and Dewey's shift, the next two officers who took over, Correctional Officers Kein[1] and Garcia, were similarly briefed, and also took no action.  (*Id.* ¶ 36.)

At UIC Hospital on May 14, 2023, Mr. Brown underwent a cystoscopy to remove the foreign object from his urethra.  He was discharged the same day "with specific instructions to maintain 24-hour Supervision & Suicide Precautions."  (*Id.* ¶¶ 37–38.)  Officers Kein and Garcia were responsible for transporting Brown back to Dixon Correctional Center.   On their way there, the officers stopped for gas, and while they were refueling, "they observed Mr. Brown breaking the plastic container and catheter needle and attempting to cut his arm."  (*Id.* ¶ 39.)  Brown proceeded "to stab himself with the needle and insert the needle into his abdominal cavity."  (*Id.* ¶ 41.)  The officers evidently did not attempt to intervene.  (*Id.*)

Immediately upon his return to Dixon, Brown was taken to the infirmary.  Medical staff were "informed of the self-harm," though it is unclear whether this information came from Officers Kein and Garcia or from Brown himself.   (*Id.* ¶ 42.)  Brown also "complained of muscle spasms, pain, [and] swelling," and he let medical staff know that he had a needle in his abdomen, but medical staff "took no immediate steps to treat his symptoms."  (*Id.*)

The next day, on May 15, 2023, Mr. Brown "found a piece of cable cord and used it to cut his leg."  (*Id.* ¶ 44.)  It is unclear whether Brown was still in the infirmary when this happened, but he remained on suicide watch at the time.  Mental health staff at the prison evaluated him following this incident and placed him into restraints.  He remained in restraints for "approximately 3–4 days without further medical treatment."  (*Id.* ¶¶ 44–46.)

On May 17, 2023, medical staff finally took X-rays of Mr. Brown's stomach, and located the needle in his abdomen.  Beyond the imaging, however, Brown received "no immediate

---

[1]  The court notes that Officer Zachary Kein is named as "Officer Keim" in the operative complaint (*e.g.*, Am. Compl. [34] ¶ 7) and "Kirm" on the docket, but State Defendants' motion to dismiss identifies him as "Zachary Kein."  (State Defs. Mot. [66] at 1.)

medical care." (*Id.* ¶ 47.) A few days later, on or about May 23, 2023, Brown "reported to the infirmary [that] he swallowed a razor in order to get them to order an X-ray to see if the needle in his abdomen had moved." (*Id.* ¶ 48.) A CT scan taken later (the Complaint does not say exactly when) "showed that the needle had migrated from Mr. Brown's right lower abdomen to his left side." (*Id.* ¶ 49.) Medical staff, again, did not provide immediate care, instead simply ordering that Mr. Brown remain "on continued pain management." (*Id.* ¶ 50.) Upon further evaluation on or about May 26, 2023, however, Brown was transported to the emergency department at UIC Chicago Hospital where doctors performed emergency laparoscopic surgery to remove the 3-inch needle from his abdomen. (*Id.* ¶ 51.)

This lawsuit resulted. Brown filed a *pro se* complaint on March 18, 2024, alleging that prison staff and staff at OSF Medical Center were deliberately indifferent to the substantial and known risk of his self-harm, and to his serious medical needs in violation of the Eighth Amendment. On April 24, 2024, noting Brown's serious and untreated mental illness and the existence of potentially unknown Defendants, the court recruited counsel for him pursuant to Local Rules 83.11 and 83.37. (*See* Order [9].)

Brown filed this amended complaint through recruited counsel on June 30, 2025 [34]. Named Defendants include, as noted, the State of Illinois; the Illinois Department of Corrections ("IDOC"); Latoya Hughes, Acting Director of IDOC; Andrea Tack, Chief Administrative Officer of Dixon Correctional Center; Wexford Health Sources, Inc ("Wexford"); and Correctional Officers Kyle Wende, Jacob Billings, Zachary Kein, and Joseph Garcia, all of whom are sued under § 1983. His civil rights claim alleges that Defendants were deliberately indifferent to his serious mental health issues and medical needs in violation of the Eighth Amendment (Count I). Importantly, Wexford—a private company contracted by IDOC to provide medical and mental health care to prisoners in IDOC's custody—was named as a Defendant for the first time in Brown's June 30, 2025 amended complaint. Brown also sues the State of Illinois, Hughes, and Tack under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, alleging that these

Defendants have carried out a policy of discrimination against mentally ill prisoners and failed to reasonably accommodate Mr. Brown's disability—serious mental illness—and have denied him sufficient supervision, rehabilitation opportunities, and adequate mental health treatment (Count II). He alleges that those same failures constitute violations of the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 701 (Count III). In addition, Brown brings an Illinois state law claim of negligence against OSF Healthcare for failing to implement suicide protocols while treating him, and against Jane Doe No.1 for carelessly placing a catheter needle on Mr. Brown's lap and failing to take any action to recover the needle after Brown hid it (Count IV). Finally, Brown alleges that OSF is liable for Jane Doe No. 1's negligence under a theory of *respondeat superior* (Count V).

Defendant Wexford moved to dismiss the amended complaint, pursuant to FED. R. CIV. P. 12(b)(6), for untimeliness in violation of the applicable statute of limitations, and failure to exhaust [61]. Defendants Billings, Garcia, Latoya Hughes, Illinois Department of Corrections, Kein, the State of Illinois,[2] Andrea Tack, Wende ("State Defendants") moved separately to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim [66]. Defendant OSF Healthcare moved to dismiss for lack of jurisdiction under FED. R. CIV. P. 12(b)(1) [76]. As explained below, OSF's motion to dismiss is denied. Wexford's motion and the State Defendants' motion are both granted. Wexford is dismissed with prejudice; Plaintiff's claims against the State Defendants are dismissed without prejudice to the filing of an amended complaint within 28 days.

**DISCUSSION**

**I.      Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint, not its merits. FED. R. CIV. P. 12(b)(6); *Hallinan v. Fraternal Ord. of*

---

[2]      It seems that the Office of Illinois Attorney General Kwame Raoul is listed as a defendant on the docket, in place of the State of Illinois, in error. The amended complaint does not list the Attorney General's Office as a defendant, but instead named the State of Illinois itself as a defendant. The motion to dismiss filed by Defendants Tack, Wende, Kein, Garcia, Billings, Hughes, the Office of the Illinois Attorney General and IDOC [66] raises arguments based on defendants actually listed in the amended complaint.

*Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is considered plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Defendants may also challenge the timeliness of a claim by way of a motion to dismiss. The statute of limitations is an affirmative defense, and therefore not typically a basis for dismissal on motion, but "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011).

A motion to dismiss Rule 12(b)(1) challenges the court's subject matter jurisdiction. "[S]ubject matter jurisdiction is a fundamental limitation on the power of a federal court to act." *Del Vecchio v. Conseco, Inc.,* 230 F.3d 974, 980 (7th Cir. 2000). If a federal court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing it. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

## II.     Analysis

### A.     Wexford's Motion to Dismiss

Wexford raises three bases for dismissal in their motion. Wexford argues, first, that Brown failed to state a claim against Wexford, warranting dismissal under FED. R. CIV. P. 12(b)(6). Second, Wexford notes it was named as a Defendant for the first time in Brown's amended complaint, filed more than two years after the alleged incidents occurred, and argues that claims against it are thus untimely. And finally, Wexford argues that Brown failed to exhaust his claims against it before filing suit. Because Brown's claims against Wexford are untimely, the court dismisses the claims against Wexford with prejudice.

### 1. Untimeliness

Actions under § 1983 are governed by the state-law statute of limitations for personal injury actions—in Illinois, two years. 735 ILCS 5/13-202; *see also Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015). Under federal law, which determines the accrual date for the purposes of calculating the two-year period, "a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).

Brown does not contest the fact that his amended complaint, which named Wexford as a Defendant for the first time, was filed on June 30, 2025, more than two years after the incidents in question took place in May of 2023. Instead, he argues that the amendment adding Wexford as a party should relate back to the date of the original complaint, which was filed on March 18, 2024—within the two-year statutory period. Under federal law, "[r]elation back is permitted in several circumstances, including when 'the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 557–58 (7th Cir. 2011) (citing FED. R. CIV. P. 15(c)(1)(C)). Relation back is also permitted "where the law of the jurisdiction that creates the applicable statute of limitations . . . permits relation back." *Id.* at 558. The court concludes that neither federal nor Illinois law would permit Brown's attempt to relate his claim against Wexford back to the date of his original complaint.

Plaintiff contends that "the relation-back inquiry is not appropriate at the pleadings stage," because that determination requires investigation into what Wexford knew or should have known. (Pl. Opp'n to Wexford Mot. [78] at 10.) As Wexford argues, however, an inquiry into what it knew or should have known is relevant only if Brown's failure to name it constituted "a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(ii). Wexford characterizes

8

Brown's failure to name it in the initial complaint as a "tactical decision," rather than a mistake. *McMurtry v. Wexford Health Sources, Inc.*, No. 18-CV-02176, 2021 WL 1165102, at *12 (N.D. Ill. Mar. 26, 2021).

While it is unclear what tactical advantage Brown would achieve by failing to name Wexford in the first place, the court agrees with Wexford that in adding it as a Defendant, Brown does not merely seek to correct a technical defect or mistaken identification of a party named in his initial complaint. Rather, he seeks to "substantively expand[] the scope of the original pleading" to challenge Wexford's policy and practices under *Monell*, a theory of liability he failed to include in his initial complaint. *Murray v. Manville Corp. Asbestos Disease Comp. Fund*, No. 87 C 5545, 1990 WL 251922, at *3 (N.D. Ill. Dec. 21, 1990) (finding that relation back was not permitted under either federal or Illinois law where plaintiff sought to relate newly-introduced wrongful death claims back to the date of the original complaint). Plaintiff suggests that relation back is nevertheless warranted; he explains that he failed to name Wexford as a defendant earlier as a *pro se* litigant, and only "discover[ed] the *Monell*-style requirement for corporate liability at a later date," when he became represented by counsel. (Pl. Opp'n to Wexford Mot. [78] at 10–11.) But discovery of a new, and not previously contemplated, theory of liability is clearly not grounds for relation back under FED. R. CIV. P. 15(c).

Brown could perhaps have alleged in his initial complaint that the medical staff, who were employees of Wexford, violated his Eighth Amendment rights in adhering to the policies and practices of their employer. But even if he had done so, the court doubts relation-back would be permitted. The Seventh Circuit has "repeatedly reiterated that 'relation back' on grounds of 'mistake concerning the identity of the proper party' does not apply where the plaintiff simply lacks knowledge of the proper defendant." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006) (quoting *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000)); *see also Eison v. McCoy*, 146 F.3d 468, 472 (7th Cir. 1998); *Baskin v. City of Des Plaines*, 138 F.3d 701,

9

704 (7th Cir. 1998); *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993). Brown's claims against Wexford in Count I are dismissed with prejudice as time barred.

### 2.     Failure to State a Claim

Because Brown's claims are dismissed as untimely, the court need not address Wexford's remaining arguments, but observes that the allegations do not appear to state a claim for relief against Wexford. Brown claims Wexford, as the private company contracted by IDOC to provide medical services and mental health care to prisoners, had the "obligation to provide comprehensive and specialized mental health services." (Am. Compl. [34] ¶ 9.) According to Brown, Wexford did not fulfill this obligation because, under the theory of liability outlined in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), "by policy and practice Wexford did not provide on-site mental health services necessary to meet the needs of persons with severe mental illnesses like Mr. Brown." (Am. Compl. [34] ¶ 9.) Wexford argues that these allegations are insufficient to state a claim against it because Brown failed to include any factual allegations indicating that Wexford maintained a policy or practice of denying mental health services. (Wexford Br. [62] at 7.)

It is well recognized that, like municipalities, corporations who act under the color of state law cannot be held vicariously liable for the Eighth Amendment violations of their employees.[3] *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) ("[J]ust as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional

---

[3]     Plaintiffs correctly point out that *Monell*'s extension to private corporations is "strenuously questioned in this Circuit." (Pl. Opp'n to Wexford Mot. [78] at 5 (citing *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 790 (7th Cir. 2014).) Indeed, this court has similarly questioned the shielding of private corporations from *respondeat superior* liability under *Monell*, noting that "corporations are traditionally subject to vicarious liability for the actions of their employees taken within the scope of their employment, and corporations face much different market pressures and incentives than municipalities." *Rankin v. Wexford Health Sources, Inc.*, No. 3:20 C 50280, 2025 WL 3764672, at *16 n.16 (N.D. Ill. Dec. 30, 2025); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (expressing skepticism of *Monell* doctrine as applied to corporations). For now, of course, this court is bound by Seventh Circuit precedent on this issue.

torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." (citation omitted)); *see also Gayton v. McCoy*, 593 F.3d 610, 622 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822 (7th Cir. 2009); *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Therefore, to establish Wexford's liability, Plaintiff must base his claim on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

Brown does not allege that Wexford has a policy of denying the mental health needs of prisoners with severe mental illness. Instead, he seems to advance a theory of liability premised on Wexford's "practice of delayed delivery of care, [and] continuous disregard of an inmate's complaints of severe pain." (Pl. Opp'n to Wexford Mot. [78] at 5.) Brown argues that his complaint as a whole contains "ample factual description of Wexford staff's repeated and sustained refusals to treat Plaintiff's acute and severe health emergency." (*Id.* at 8 (citing Am. Compl. [34] ¶¶ 38–51).) The paragraphs Brown cites describe Brown's insertion of the needle into his abdomen and the subsequent treatment of that wound by medical staff at Dixon Correctional Center, allegations that center around Brown's *physical health*. None of these paragraphs allege that Wexford denied Brown *mental health* treatment. Nor has Brown alleged that the denial of mental health services at Dixon led to his self-harm and suicidality. Rather, he appears to assert that he was not provided with adequate supervision to ensure he did not self-harm. As the court reads his allegations, however, continuous suicide watch appeared to be the responsibility of correctional officers, who are employed by IDOC, not Wexford.

The court concludes that, if Brown's allegations against Wexford had been timely filed, they would be dismissed for failure to state a claim. *See Banks v. Vill. of Bellwood*, No. 11-CV-

11

00473, 2011 WL 5509572, at *2 (N.D. Ill. Nov. 9, 2011) ("A *Monell* claim that entirely lacks factual support will be dismissed." (citing *McTigue v. City of Chicago*, 60 F.3d 381, 383 (7th Cir. 1995)).

### B. Motion to Dismiss by State Defendants

#### 1. Section 1983 Claims

State Defendants—Andrea Tack, Kyle Wende, Zachary Kein, Joseph Garcia, Jacob Billings, Latoya Hughes, the State of Illinois, and the Illinois Department of Corrections—moved to dismiss Brown's complaint in part, arguing that improper defendants were listed for various claims, and that several defendants were listed in the improper capacity. Brown concedes nearly all of these points, and does not oppose dismissal of his Section 1983 claims against the State of Illinois (which enjoys Eleventh Amendment immunity), the Illinois Department of Corrections, Hughes, and Tack. The allegations in Count I against these Defendants are dismissed without prejudice. Claims against Correctional Officers Wende, Kein, Garcia, and Billings, are not challenged in these motions and will proceed.

#### 2. ADA and Rehab Act Claims

Defendants also argue that Brown named the wrong Defendants in Counts II and III, his ADA and Rehab Act claims. (State Defs. Mot. [66] at 8.) IDOC—not the State of Illinois, Hughes, or Tack—is the proper party for claims under the ADA and RA. Brown concedes this point, and asks for leave from the court to amend his complaint accordingly. But Defendants contend that any claims under ADA or the Rehab Act, even against the proper parties, must be dismissed because these statutes "do not create a remedy for medical malpractice." (State Defs. Mot. [66] at 9.) The court agrees with Defendants.

Because the standards that govern claims under these statutes "are functionally identical," the court can address them together. *Hilliard v. Mariscal*, No. 23-CV-00562, 2025 WL 588592, at *2 (N.D. Ill. Feb. 24, 2025). "[A] plaintiff who cannot state a claim under Title II of the ADA also cannot state a claim under the RA." *Bilik v. Shearing*, No. 3:16-CV-0821-NJR-GCS, 2019 WL 8063970, at *11 (S.D. Ill. Aug. 30, 2019), *aff'd,* 860 F. App'x 435 (7th Cir. 2021).

The crux of Brown's ADA claim is that, due to Defendants' failure to provide Brown with "sufficient supervision, rehabilitation opportunities, adequate mental health treatment," and the "reasonable accommodation of inpatient intensive psychiatric treatment," Mr. Brown was "deprived of access to services, programs, and activities, including education, programming, recreation, exercise, human interaction, and mental health treatment and services." (Am. Compl. [34] ¶¶ 72–76.). Brown's allegations in support of his Rehab Act claim are nearly identical. (*Id.* ¶¶ 78–83.) But Brown offers no factual allegations to support these conclusory claims. Brown does not, for example, describe any instance where he sought out inpatient psychiatric treatment and was denied. Nor does he allege that he was limited in his ability to participate in any specific prison activities by virtue of his inadequate mental health treatment. Instead, Brown focuses on the insertion of a 3-inch needle into his own abdomen and Defendants' "near total denial of medical and mental health care in response to a known psychiatric emergency." (Pl. Opp'n to State Defs. Mot. [79] at 7.) He characterizes the denial of medical services as a violation of the ADA and Rehab Act.

Plaintiffs are correct that medical services are plausibly among the "services, programs, or activities" that are covered by the ADA. *United States v. Georgia*, 546 U.S. 151, 157 (2006) ("It is quite plausible that the alleged deliberate refusal of prison officials to accommodate Goodman's disability-related needs in such fundamentals as . . . medical care . . . constituted exclusion from participation in or . . . denial of the benefits of" the prison's services, programs, or activities." (cleaned up) (citation omitted)). But, as the court explained in *Hilliard v. Mariscal*, the ADA applies only to the "complete deprivation of mental health medical services, not the quality of . . . medical services under a malpractice standard of care." No. 23-CV-00562, 2025 WL 588592, at *4 (N.D. Ill. Feb. 24, 2025). The plaintiff in *Hilliard* claimed that he was "denied *any and all* mental health services after he initially reported being suicidal," and that he was again provided "*no* mental health treatment" after he attempted suicide twice. *Id.* at *4 (emphases in original). Brown's complaint includes no such factual allegations, either with regard to mental

13

health services or medical treatment. Indeed, based on Brown's own allegations, it appears that the prison did, in fact, provide him with some mental health and physical health treatment: Brown was, at various times, on continuous suicide watch (Am. Compl. ¶¶ 22, 44); he was housed in the Psychiatric Unit at the Dixon Correctional Center (*id.* ¶ 22); he was taken to an outside facility after he attempted self-harm (*id.* ¶ 23); and he was treated both at Dixon and at an outside facility for the needle in his abdomen (*id.* ¶¶ 45–51). Brown does allege delay in the physical medical care he received for the wound in his stomach. That delay may reflect inadequate care, but the ADA and the Rehab Act "do not apply to issues of allegedly inadequate medical treatment." *McDaniel v. Syed*, 115 F.4th 805, 825 (7th Cir. 2024).

The court concludes that Brown's amended complaint fails to state a claim under these statutes against *any* defendant. Counts II and III of Brown's amended complaint are dismissed without prejudice. The court grants Brown leave to amend the complaint to name correct Defendants and state allegations that would support a viable legal theory.

### C.     OSF Healthcare's Motion to Dismiss

OSF moves to dismiss Brown's claims against it under FED. R. CIV. P. 12(b)(1), arguing that the court lacks subject matter jurisdiction over the claims Brown brings against them. (OSF Mot. [76] at 3.) OSF raises a facial challenge to subject matter jurisdiction (*id.*), meaning it contends that Brown "has not sufficiently *alleged* a basis of subject matter jurisdiction," even accepting all of his allegations as true. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (emphasis in original) (internal quotations omitted). "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.* at 173. OSF argues that "there are no facts or bases alleged" by Brown in his first amended complaint "that give rise to subject matter jurisdiction" over OSF. (OSF Mot. [76] at 3.) The court disagrees.

At this stage, Brown has alleged sufficient facts to establish federal question jurisdiction over his § 1983 claims against Correctional Officers Wende, Billings, Kein and Garcia, so Brown's

14

claims against OSF can be adjudicated under the court's supplemental jurisdiction. "If a district court possesses original jurisdiction over one claim, 28 U.S.C. § 1367(a) permits that court to also exercise supplemental jurisdiction over any claim that is 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Preston v. Wiegand*, 573 F. Supp. 3d 1299, 1307 (N.D. Ill. 2021) (quoting *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019)). "Two claims are part of the same case or controversy if they 'derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient.'" *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)).

Brown's federal and state law claims do not "merely share a factual background," *cf. Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005); rather, they are "two pieces of the same story." *Frazier v. Wexford Health Sources, Inc.*, No. 3:19-CV-50121, 2021 WL 1165094, at *6 (N.D. Ill. Mar. 26, 2021). Brown claims that he was able to access the needle he eventually used to self-harm only because of the negligence of one of OSF's employees, and OSF's failure to put in place crisis or suicide protocol while treating Brown. He alleges that OSF's employee, Jane Doe No. 1, "informed Correctional Officers Wende and Billings that Mr. Brown had taken the catheter needle." (Am. Compl. [34] ¶ 29.) This is an operative fact for Brown's claims against the correctional officers and OSF, as this part of the story bears on both whether Jane Doe No. 1 sufficiently discharged her duty of care, and whether the correctional officers were aware of the risk to Brown's safety but still exhibited deliberate indifference. Because the "original state law claims all ha[ve] a basis in at least a portion of" the facts relevant to the federal law claim, this court can exercise supplemental jurisdiction over Brown's state law claims against OSF. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

OSF takes issue with the fact that Brown's amended complaint fails to assert that the court has supplemental jurisdiction over his claims against OSF and fails to make reference to 28 U.S.C. § 1367(a), the statute governing supplemental jurisdiction. (OSF Mot. [76] at 3.) True,

15

Brown has not specifically asserted that the court has supplemental jurisdiction over his claims against OSF, but this is not dispositive  *Crout v. Barber-Colman Co.*, No. 93 C 20122, 1993 WL 377113, at *3 (N.D. Ill. Sept. 10, 1993) ("It is 'well settled that FED. R. CIV. P. 8(a)(1) does not require plaintiff to set forth the statutory basis for the district court's subject matter jurisdiction in order for the court to assume jurisdiction, so long as [he] alleges facts sufficient to bring the case within the court's jurisdiction.'" (quoting *Caldwell v. Miller*, 790 F.2d 589, 595 (7th Cir. 1986)).

OSF's motion to dismiss under FED. R. CIV. P. 12(b)(1) is denied.

## **CONCLUSION**

Wexford's Motion to Dismiss [61] is granted, and Brown's claims against Wexford in Count I are dismissed with prejudice as untimely.  State Defendants' motion to dismiss [66] is granted, and Counts I, II, and III are dismissed without prejudice.  OSF Healthcare's motion to dismiss [76] is denied.  Brown is granted leave to file an amended complaint within 28 days.  The parties are directed to submit their Report of Planning Meeting on or before May 29, 2026.

ENTER:

Dated:  March 17, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

16